**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2579-17T2

MOHAMMAD RAHAMI,

    Plaintiff-Appellant,

v.

MOHAMAD ELKHOGA and
M & M, LLC,

    Defendants-Respondents.

_____

           Submitted January 8, 2019 – Decided January 23, 2019

           Before Judges Gilson and Natali.

           On appeal from Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000024-17.

           The Law Firm of Hassen I. Abdellah, attorneys for appellant (Noelle van Baaren, on the brief).

           Andril & Espinosa, LLC, attorneys for respondents (Alcides T. Andril, on the brief).

PER CURIAM

Plaintiff Mohammad Rahami and defendant Mohamad Elkhoga were the sole members of M & M, a limited liability company, whose sole asset was a building located at 104-106 Elmora Avenue in Elizabeth (Elizabeth property). Disputes arose between the parties regarding their respective ownership interests in the building and the management of M & M resulting in the filing of complaints and counterclaims, which were ultimately consolidated in the Chancery Division. After a bench trial, the court issued a January 22, 2018 order granting a partition of the property, dissolving M & M, awarding defendant $6664 in damages, and ordering plaintiff's counsel to prepare a deed for defendant to sign to effectuate the sale of the Elizabeth property. We affirm.

I.

We glean the following facts from the trial record. From 2002 through 2016, plaintiff was a tenant at the Elizabeth property where he operated a restaurant and lived in a three-bedroom apartment. On December 31, 2008, he signed a two-year lease for his apartment and in January 2009, he signed a ten-year lease for the restaurant. In an August 31, 2010 lease agreement, plaintiff's landlord agreed to rent a second commercial unit at the Elizabeth property for

five years to a new tenant, H.R.,[1] who would operate a computer store next to plaintiff's restaurant.

In 2012, plaintiff's landlord declared bankruptcy and Kearny Federal Savings Bank (Kearny) instituted foreclosure proceedings on the Elizabeth property. During the foreclosure proceedings, plaintiff began paying rent directly to Kearny. Kearny contacted plaintiff and inquired if he was interested in purchasing the Elizabeth property for $300,000. Plaintiff agreed to purchase the property for $250,000, and paid a $5000 deposit. Kearny granted plaintiff three months to obtain the funds necessary to pay the rest of the purchase price.

In early June 2013, plaintiff met defendant. Shortly thereafter, plaintiff discussed the Elizabeth property with him and the parties agreed to jointly purchase the building. Plaintiff contacted Gregory Juba, Esq., to prepare an agreement of sale and to form M & M.

On May 21, 2013, Kearny, as seller, and plaintiff and defendant, as purchasers, signed a sales agreement. The agreement listed the purchase price as $250,000, acknowledged that plaintiff made a $5000 deposit, that $20,000 was due upon execution of the agreement, and that $225,000 would be due at closing.

---

[1] We use initials to protect the tenant's privacy.

A-2579-17T2

Prior to closing, plaintiff and defendant formed M & M.  The operating agreement prepared by Juba named plaintiff and defendant as the sole members of the company, and further stated that defendant had provided an initial capital contribution of 85% and, accordingly, held an 85% ownership interest.  The agreement listed plaintiff's capital contribution and ownership interest as 15%.  The operating agreement identified defendant as the "Managing Member," and provided that "[i]n consideration of [plaintiff's] receipt of 15% of the LLC as opposed to his actual 10% monetary contribution, it shall be the responsibility of . . . [plaintiff] to manage and maintain the premises . . . as his normal duties."

On September 16, 2013, Kearny and M & M finalized the sale of the Elizabeth property.  Also on that day, Andrew Antanaitis, on behalf of Kearny, and plaintiff and defendant, on behalf of M & M, signed an assignment of lease, which assigned plaintiff's December 31, 2008 lease agreement to M & M.  Moreover, the August 31, 2010 lease between plaintiff's former landlord and H.R. was also assigned to M & M.  By the time of closing, plaintiff had provided nearly $30,000 for the deposit, and defendant had provided $220,000.  Three years later, in September 2016, plaintiff closed his restaurant.

On January 19, 2017, defendant's counsel sent a letter to plaintiff notifying him to cease all activities as manager of the Elizabeth property and that a

A-2579-17T2

members meeting was scheduled for January 24, 2017. The letter explained that the purpose of the meeting was "to amend the certificate of formation and to remove [plaintiff] from all functions as manager of the premises and further to propose a resolution granting [defendant] authority to dissolve the company in the event the parties cannot agree as to the disposition of [plaintiff's] membership interest[.]" On that same date, M & M sued plaintiff in the Special Civil Part for $7,072.68 for unpaid rent, late charges, and court costs.

On March 29, 2017, plaintiff leased the commercial unit previously occupied by his restaurant to Deisy's Café Bakery LLC (Deisy's Café). The lease ran from April 1, 2017 through April 1, 2019, with a monthly rent of $1800 and listed M & M and plaintiff as the landlords. In addition to renting the premises, the lease included an equipment lease pursuant to which Deisy's Café paid a $5000 deposit and agreed to pay plaintiff $700 per month.

The court conducted a bench trial on November 8, 9, and 14, 2017. At trial, plaintiff testified that he believed he owned a one-half interest in M & M. He further stated that he and defendant had an agreement that he would pay $4000 to $5000 monthly to defendant until he paid the $95,000 owed for half of the purchase price of the Elizabeth property. Plaintiff testified it was never the

parties' intent that he be considered a tenant, and denied any obligation to pay rent to M & M for the commercial or residential units.

Defendant disputed plaintiff's testimony and stated that after the closing, both he and plaintiff understood that plaintiff was obligated to pay rent for the commercial and residential units. Defendant further testified that after plaintiff closed his store in September 2016, he stopped paying rent.

Juba testified that he was initially contacted by plaintiff. When he met with the parties, plaintiff had already prepared the letter of intent for the purchase of the building. Juba stated that during his meeting with the parties, they spoke English and neither he nor plaintiff had any difficulty understanding each other. Juba testified that he discussed the operating agreement and lease assignments with plaintiff and that the parties "absolutely" agreed to provide plaintiff with a 15% ownership interest in M & M, despite his 10% contribution.

On January 22, 2018, Judge Katherine R. Dupuis issued a comprehensive written opinion in which she concluded that plaintiff was bound by the operating agreement and deed of sale, and was obligated to pay rent to M & M for the commercial and residential units. Judge Dupuis specifically found "incredible" plaintiff's testimony that he did not understand English and that he signed the operating agreement and lease assignments without first reading the documents.

In contrast, the court found that Juba and defendant testified credibly when they stated that plaintiff spoke and understood English. The court explained that while the operating agreement did not explicitly provide that plaintiff was to continue paying rent on the commercial and residential units, plaintiff knew that both leases had been assigned to M & M, and thus the leases were enforceable against him. The court also noted that plaintiff had "placed his rent, as well as the rent for the other tenants, into the M & M bank account until September 2016," which demonstrated his understanding that he was obligated to pay rent to M & M. The court further found that plaintiff's claim to a one-half interest in the company, as opposed to a 15% interest, was contradicted by his acceptance of his share of profits in 2014 and 2015.

Accordingly, the court entered a January 22, 2018 order: 1) partitioning the property and dissolving M & M; 2) establishing plaintiff's interest in the company at $31,000; 3) declaring defendant entitled to $37,664 from plaintiff for funds withheld from M & M; 4) awarding defendant the net outstanding balance of $6664; and 5) compelling the parties to execute the documents necessary to effectuate the sale of the Elizabeth property. This appeal followed.

A-2579-17T2

## II.

Plaintiff maintains the court committed error in concluding that there was a meeting of the minds between the parties with respect to the operating agreement. Plaintiff also claims the court mistakenly determined that the lease agreements were assigned to M & M at closing, and that his monthly payments constituted rent. We disagree and affirm substantially for the reasons stated in Judge Dupuis' well-reasoned opinion. We add the following comments.

## III.

Appellate courts conduct a limited review of the findings of fact of a trial court. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Indeed, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Accordingly, an appellate court should only disturb the factual findings of a trial court when "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms Resort, Inc., 65 N.J. at 484).

With respect to plaintiff's understanding of the terms of the operating agreement, defendant and Juba both stated that plaintiff spoke and understood English and Judge Dupuis found plaintiff's claim that he did not understand English and signed the operating agreement without reading it not to be credible. Juba also testified that plaintiff and defendant were "adamant" about including plaintiff's 15% interest in the text of the operating agreement. The court also noted that plaintiff's actions in 2014 and 2015 in accepting his 15% share of M & M's profits demonstrated he was aware of his 15% ownership interest. Thus, there was substantial evidence in the record to support the court's finding that plaintiff understood he would own only 15%, and not 50%, of M & M.

The September 16, 2013 "Assignment of Lease," which listed M & M, and plaintiff and defendant as "members" of M & M, as assignees, furnished a sufficient evidentiary basis to support the court's finding that M & M was assigned the leases at closing, and thus M & M, and not plaintiff, was the lessor. Finally, from the time M & M purchased the Elizabeth property, the monthly deposits made by plaintiff into the M & M bank account routinely totaled $5019, which represents plaintiff's $1669 rent obligation for the commercial unit where he operated his restaurant, his $1150 rent obligation for the residential unit, $750 for a studio apartment rented out at the Elizabeth property, and $1450 rent for

the second commercial unit. Thus, the court's finding that the payments made by plaintiff were rent payments has ample support in the record.

To the extent we have not specifically addressed any of plaintiff's arguments, we find them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2579-17T2